## MAYOR AND COUNCIL OF GAINESVILLE *et al.* v. DEAN.

1. When a city charter authorizes an improvement of the streets and sidewalks of the city and an assessment for such improvements to be made upon the property abutting thereon, and provides that the assessment shall be enforced by executions to be issued against the real estate and the owners thereof at the date of the ordinance making the assessment, and also provides that "the defendant shall have the right to file an affidavit denying that he owes the whole or some part thereof of the sum for which the execution is issued," and that the issue thus made shall be returned to the superior court of the county in which the city is located, for trial, the defendant in execution may in such an illegality set up in defense whatever would have the effect of extinguishing liability for such assessment, whether such defense arise from payment, unconstitutionality of the law under which the assessment was made, or such irregularity in the manner in which the assessment was made as to make it illegal, or otherwise.

2. The fact that the city is attempting to enforce two executions for assessments against two different parcels of land belonging to the same person, and that a third execution has been issued against the same person for an assessment the levy of which is threatened, will not authorize the granting of an injunction upon the ground that a multiplicity of suits will be thereby avoided, or upon the ground that the executions constitute clouds upon the title of the owner.

Argued December 7, 1905.—Decided January 13, 1906.

Injunction. Before Judge Kimsey. Hall superior court. August 30, 1905.

H. H. Dean brought a petition for injunction against the Mayor and Council of the City of Gainesville, and alleged: During the year 1902 the city issued bonds to the amount of $10,000, for the purpose of improving its streets, and macadamized a portion of Main and Green streets. All of this work was done by August 1, 1903. On September 10, 1904, petitioner bought a certain lot of

land, fronting on Green street, where this paving had been done, and on November 19, 1904, he bought a lot fronting on Main street, where the said paving had been done. Executions were issued against the respective vendors of the two above-mentioned lots, and brought to petitioner for payment, which he refused to make. Thereupon the clerk of the city council issued executions against petitioner, and petitioner was given written notice that said executions were issued for curbing and macadam for the year 1905. These executions were levied upon the said two lots of petitioner. A third execution has been issued against petitioner, for curbing and macadam, which the city marshal has threatened to levy upon property of petitioner. All of the work of curbing and macadamizing the streets was done prior to August 17, 1903, when the act of 1892, amending the charter of the City of Gainesville, was of force, and before the repeal of any portion of that act by the act of 1903; and under the act of 1892, notice to property owners was necessary before such work could be done by the city, and no notice was given petitioner or his vendors. The prayer was, for orders restraining the mayor and council and Harbison, the marshal, from proceeding with the executions, that the executions be declared void, and that section 3 of the act of 1903, amending the charter of Gainesville, and repealing that portion of the charter which provided for notice to property owners before paving, etc., at their expense, be declared unconstitutional and void, as providing for the taking of property without due process of law. The defendants demurred to the petition, on the ground that there was an adequate remedy at law, and answered; and on a hearing the injunction was granted as prayed. The defendants excepted.

*J. G. Collins*, for plaintiffs in error. *H. H. Dean*, contra.

COBB, P. J. The first question to be determined by us in the consideration of this case is whether the demurrer to the petition, upon the ground that the petitioner had an adequate remedy at law, was well taken. The act amending the charter of the City of Gainesville, approved December 12, 1892 (Acts 1892, p. 172), provides that when an execution has been issued against a property owner for work done on the street or sidewalk abutting upon his property, he shall have the right "to file an affidavit denying that he owes the whole or some part thereof of the sum for which the

execution issued," and the affidavit "shall be returned to the superior court of Hall county and there be tried and the issue determined as in cases of illegality," etc.   The act approved August 17, 1903, amending the charter of the City of Gainesville (Acts 1903, p. 524), does not change the above provision of the charter.   It would therefore seem that the defendant had a complete remedy at law to prevent the collection of an assessment which for any reason was illegal. But it is contended by the defendant, that, under the above provision authorizing the filing of an affidavit of illegality, he would not be entitled to question the constitutionality of the act of 1903, which he claims is void, nor object to the unlawful issuance of the executions upon the ground that each was issued for two separate items, i. e., macadamizing and curbing.   We see no reason why these defenses could not be set up by way of illegality.   If the defendant has the right to deny his liability for the whole or any part of the execution which has been issued against him, he can set up any legal defense which would relieve him of such liability.   The unconstitutionality of the act providing for the collection of such assessments would be as complete a bar to their collection as proof of payment; and the same may be said of an irregularity in the issuances of the executions which might be fatal.   It is true that in the case of *Rice* v. *Macon,* 117 *Ga.* 401, it was held that injunction was not a proper method of preventing the collection of such an execution as the above, for the reason that the charter of Macon specially authorized the defendant in execution, by affidavit of illegality, "to raise any constitutional question," and the charter of Gainesville has not a similar provision.   But we think that case might have been put upon the broader ground, and that its reasoning might be applied where the simple right to show no indebtedness by illegality is given.   It was there said that it appeared that the legislature were "apparently apprehensive lest the right to contest the validity of the execution might not be deemed sufficient to cover any and every constitutional question."   This apprehension was not well founded.   It will be noted that the act of 1892 provides that the affidavit of illegality shall be returned to the superior court of Hall county, "and there be tried and the issue determined as in cases of illegality."   The effect of this is to open to the affiant every path of defense he might have taken in an illegality case under the code, where the plaintiff was proceeding in a summary

way. A reading of the charter provision authorizing this proceeding to prevent the collection of such executions, where for any reason they were not legally collectible, will make it clear that the purpose of the legislature was not to limit the defense which might be there set up, but to permit any defense which might be set up in a regular illegality case of the character above indicated.

The further claim of the plaintiff, that three executions had been issued, and an equitable petition was necessary to prevent a multiplicity of suits, is also without merit. Three executions do not bring about the multiplicity of suits contemplated by the code as a ground for the exercise of the extraordinary powers of a court of equity. The three executions have been issued by the City of Gainesville against the defendant in error. Two have been levied, each upon a separate lot of land. The third has not been levied, and does not seem to be directed against any specific property. But the allegation is that the marshal is threatening to enforce it by levy. The general rule is that a court of equity will interfere to prevent a multiplicity of actions where they rest upon some common right invaded, or upon some common injury inflicted; that is, where there is one common right in controversy which is to be established by or against several persons, or one person asserting a right against many, or many against one. Under such circumstances a court of equity will not permit a party to be harassed by a multiplicity of suits, but will determine the whole matter in one action. Civil Code, §4894; *Smith* v. *Dobbins,* 87 *Ga.* 316. Even if the issues arising out of the levy of the two executions were identical, the cases would not be within the rule above referred to. It has been said that where relief can be clearly afforded by a court of law by an order consolidating the suits, an injunction will be refused. Bispham's Equity (3d ed.), §417. The law requires an affidavit of illegality to the execution of the character now in question to be returned to the superior court for trial; and if it should appear that the two were identical, although the property levied on was different, the court in its discretion might consolidate the cases. We do not think the facts of the case bring it within the rule which authorizes a court of equity to interpose by injunction to prevent a multiplicity of suits.

But it is said that the executions which have been levied, as well as that which has not been levied, constitute clouds upon the title

48

of the owner, the defendant in error.   A cloud upon the title of the true owner of the land, such as may be removed in equitable proceedings, is some deed or other writing which by itself, or in connection with proof of possession by a former occupant, or other extrinsic facts, gives the claimant thereunder an apparent right in or to the property.   Civil Code, §4893; *Walker* v. *Lewis*, 106 *Ga.* 758; *Hanesley* v. *Bagley*, 109 *Ga.* 346.   The act of August 22, 1905 (Acts 1905, p. 102), does not change the rule just referred to. The effect of that act is merely to authorize a proceeding to remove a cloud when the cloud consists of an instrument which is void upon its face.   An execution, whether issued upon an ordinary judgment, or for taxes or an assessment, does not give the plaintiff in execution any real or apparent right "*in* or *to* the property" of the defendant in the execution.   The judge erred in granting the injunction.        *Judgment reversed.   All the Justices concur.*