### BIBB COUNTY *et al v.* ELKAN *et al.*

No. 11769. JUNE 18, 1937.

*James C. Estes,* for plaintiff in error.

*Hall & Bloch, Park & Strozier, Harris, Harris, Russell & Weaver,* and *Carlisle & Bootle,* contra.

HUTCHESON, Justice. In October, 1934, Eli Elkan filed his petition against Bibb County, the board of commissioners of said county, and the sheriff, seeking to set aside a tax sale at which Bibb County was the purchaser, and for other relief. By amendment the Penn Mutual Life Insurance Company and L. Snyder were made parties defendant. The petition as amended set forth substantially the following facts and contentions. On June 1, 1929, Hyman Kaplan conveyed to petitioner by deed to secure debt property described as "lot 8, block 70, according to the plan of the City of Macon, and more particularly described as follows: commencing at the northwest corner made by the intersection of Cherry Street with the alley running from Cherry Street to Poplar Street through the block bounded by Cherry, New, Poplar, and Spring Streets, and running thence in a northerly direction along Cherry Street 35 feet, thence at right angles in a westerly direction parallel with said alley 125 feet, thence at right angles in a northerly direction 35 feet, thence at right angles in a westerly direction 85 feet to the alley running through the said block from New to Spring Streets and parallel to Cherry Street, thence at right angles in a southerly direction 70 feet along said last-named alley to the first-described alley which runs from Cherry Street to Poplar Street, thence at right angles in an easterly direction 210 [feet] along the alley which runs from Cherry Street to Poplar Street to point of commencement." The debt secured by this deed has never been paid. On the property is a house known as 852 Cherry Street. On May 26, 1926, Kaplan executed and delivered to the Penn Mutual Life Insurance Company a deed to secure debt, conveying certain premises on which is located a store building known as 522 Poplar Street. On November 21, 1930, Kaplan executed and delivered to L. Snyder a deed to secure debt, conveying the premises on which is located an apartment-house known as 818 Cherry Street. In 1931 and 1932 Kaplan owned two other pieces of property in the City of

Macon upon which were located an apartment-house and store building known as 818 Cherry Street and 459 Second Street, respectively. His returns for State and county taxes for 1931 were as follows: 852 Cherry Street, $4500; 818 Cherry Street, $22,500; 522 Poplar Street, $14,000; 459 Second Street, $15,000. His returns for 1932 were the same as for 1931. In September, 1932, the Penn Mutual Life Insurance Company obtained a release of the property known as 522 Poplar Street from the lien of State and county taxes for the year 1931. On February 1, 1933, Kaplan obtained a release of the property known as 459 Second Street from the lien of State and county taxes for the years 1931 and 1932.

On November 7, 1933, the date of the tax sale hereinafter referred to, Kaplan owed State and county taxes for the years 1931 and 1932 on the premises upon which is located the house known as 852 Cherry Street, and on the premises on which is located the apartment-house known as 818 Cherry Street, and owed State and county taxes for 1932 on the premises on which is located the store building known as 522 Poplar Street. Previously to November 7, 1933, tax executions, for State and county taxes for the year 1931 in the amount of $637, with interest from December 21, 1931, and for State and county taxes for the year 1932 in the amount of $901.62, with interest from December 20, 1932, had been issued by the tax-collector of Bibb County. On August 8, 1933, these executions were levied on property described in the entry of levy as "house and lot in Upper City District O. C. 70-6-A. H., known as No. 852 Cherry Street; bounded on one side by Cherry Street, on another side by Bibb Land Company, on another side by an alley, and on the other side by an alley." On November 7, 1933, the property so described was exposed for sale in satisfaction of the tax executions, at which sale the County of Bibb was the highest and best bidder for $1726.08, the amount of taxes, interest, and costs due on said executions; and the sheriff executed and delivered to the county a deed conveying the property described in the levy. Petitioner did not know of the sale until several months thereafter, having learned of it for the first time when Kaplan applied to the Home Owners Loan Corporation for a loan on the property described in the security deed to petitioner. Not only was petitioner ignorant of the fact that the property

had been sold for taxes, but Kaplan had repeatedly advised petitioner that all taxes on the property were paid. Bibb County did not pay over to the sheriff any money, or cash, or other thing of value; and before the filing of this suit and the tender hereinafter alleged, Bibb County had not parted with any cash or other thing of value in consideration of the deed being made to it. At the time of said sale Kaplan owed, on the premises conveyed to petitioner, State and county taxes for the year 1931 in the principal amount of $207, with interest from December 20, 1931, at seven per cent., and State and county taxes for the year 1932 in the principal amount of $103.50, with interest at the same rate from December 21, 1932. These said sums, plus a ten per cent. penalty thereon, were tendered to the County of Bibb with the request that it deliver up and cancel the tax deed which it holds. The tender was refused by the county, it contending that it has the right to hold said property until paid $1726.08 with interest at seven per cent. from November 7, 1933. Petitioner has at all times been willing, ready, and able to pay the taxes which Kaplan owed on the premises held by petitioner under the security deed to him by Kaplan.

The tax deed is void by reason of the indefiniteness of the description therein. The tax sale is void, and the deed made pursuant thereto should be delivered up and canceled, for the reason that the property last conveyed by Kaplan by security deed to Snyder should have been levied on to satisfy said tax executions, and not on the property conveyed to petitioner by Kaplan. The sale is void and of no effect, and the deed should be delivered up and canceled for the reason that the levying officer did not give notice of the levy to the tenant in possession of the property levied on. The tax sale and deed made pursuant thereto are void for the further reason that the land levied upon and sold was of a far greater value than an amount sufficient to satisfy the tax executions, being of the value of $6500. Located on the rear of the premises levied upon are seven or eight negro tenant-houses, any or all of which can readily be separated and subdivided from the residence facing Cherry Street; and said rear portion is of ample value to satisfy in full the tax executions, together with all costs and interest charges accumulated thereon. By amendment it was shown how the land levied on could have been divided into various

parcels of various values sufficient to satisfy the tax executions. The same was also shown in respect to the premises on which was located the apartment-house known as 818 Cherry Street. It was further alleged, that where several creditors of a common debtor each have taken security deeds on separate and distinct pieces of property, and each creditor has relatively to the other the highest lien upon the property title to which has been conveyed as security for the debt, and taxes thereafter accrue which constitute a lien upon all the debtor's property, and there is issued against the debtor a tax execution in personam, which thus binds all his property, the burden of discharging the lien of these tax executions should, upon equitable principles, be apportioned between the several lien creditors by making each separate piece of property liable for its proportion of the whole amount of taxes, according to the respective valuations at which the properties were assessed for taxation. Kaplan is insolvent. He has refused and failed to pay any part of the taxes, and L. Snyder and Penn Mutual Life Insurance Company have failed to pay any part of the taxes, except as alleged above. Twelve months have not elapsed since the date of the sale, and the petitioner apprehends that when twelve months have elapsed the County of Bibb will sell the "aforesaid" premises to some innocent purchaser. The prayers were that the County of Bibb and the commissioners be enjoined from selling the property in dispute; that the tax deed be delivered up and canceled as a cloud on petitioner's title; that the levy and purported sale under the tax executions be decreed void because of the excessiveness of the levy; and for decree against Snyder and Penn Mutual Life Insurance Company, compelling payment by them of such portion of the tax executions as are in the same proportion as the assessed valuation of the properties upon which they respectively hold security deeds bears to the assessed valuation of the properties owned by Kaplan for the respective years 1931 and 1932; and for such further relief as may seem meet and proper.

The County of Bibb, the board of commissioners, and the sheriff demurred to the petition as amended. The court overruled the demurrers, and these defendants excepted. The nature of the demurrers appear hereinafter.

1. The petition as amended sufficiently and definitely alleged, as against general and special demurrers in respect thereto, that

the property levied on was capable of being so subdivided that a part thereof less than the whole could have been levied on and sold for an amount sufficient to satisfy the tax executions. If such facts are true, as they must be taken to be on demurrer, the petitioner was entitled to submit the question of the excessiveness of the levy to the jury, and upon proper proof would be entitled to have the tax deed canceled and the sale under the levy declared void. Code, § 39-1316; *Brinson* v. *Lassiter*, 81 *Ga.* 40 (6 S. E. 468); *Doane* v. *Chittenden*, 25 *Ga.* 103; *Morgan* v. *Burks*, 90 *Ga.* 287 (15 S. E. 821); *Smith* v. *Jones*, 40 *Ga.* 39, 44; *Mixon* v. *Stanley*, 100 *Ga.* 372, 381 (28 S. E. 440); *Roser* v. *Georgia Loan & Trust Co.*, 118 *Ga.* 181 (44 S. E. 994). The court did not err in overruling the general demurrer.

2. While ordinarily, before one would be entitled to set aside a tax sale on the grounds that the levy under the execution was excessive, he must tender to the purchaser at such sale the amount paid by such purchaser at the sale (Code, § 37-104; *Clark* v. *C. T. H. Cor.*, 181 *Ga.* 710 (11), 184 S. E. 592), no such tender is required in the instant case, under the allegations of the petition that the purchaser (Bibb County) had not paid any part of the amount of its bid to the sheriff.

3. Under the allegation that the petitioner did not know of the tax sale until several months thereafter, and had been repeatedly advised by the defendant in execution that the taxes had been paid, which was sufficient reason for the failure of petitioner to pursue its remedy at law under the Code, § 92-7801, the ruling in *County of Bibb* v. *Mortgage Bond Co.*, 183 *Ga.* 402 (188 S. E. 698), does not apply. In that case no reason was alleged why the petitioner therein had failed to pursue its legal remedy at the proper time.

4. Inasmuch as the petition alleges sufficient facts for the avoidance of the sale and the tax deed on the ground that the levy of the executions was excessive, the petitioner, under the rulings in *Harry L. Winter* v. *First National Bank of Quitman*, 164 *Ga.* 364 (138 S. E. 794), *Phœnix Mutual Life Ins. Co.* v. *Bank of Kestler*, 170 *Ga.* 734 (154 S. E. 247), *Federal Land Bank of Columbia* v. *DeLoach*, 172 *Ga.* 281 (157 S. E. 477), and *Griffin* v. *Lane*, 177 *Ga.* 31 (169 S. E. 306), would be entitled to have the amount of the executions apportioned between the several security-

deed holders, by making each separate piece of property liable for its proportion of the whole amount of the taxes, according to the respective valuations at which the properties were assessed and returned for taxation.

5. Whether the tender alleged in the petition, together with the prayer that the other security-deed holders be required to pay their proportionate part of the tax executions, is sufficient to entitle the petitioner to redeem the property from the tax sale, need not now be decided. If upon the trial of the case the jury should find that the levy of the execution was not excessive and the sale for that reason not void, then the question would be presented for decision.

6. The rule of inverse order of alienation as set out in the Code, § 39-118, does not apply to the instant case, under the facts as alleged in the petition. See *Harry L. Winter* v. *First National Bank, Phœnix Mutual Life Ins. Co.* v. *Bank of Kestler,* supra; *Decatur County B. & L. Asso.* v. *Thigpen,* 173 *Ga.* 363 (4) (160 S. E. 387). The court erred in overruling the demurrer to that part of the petition which alleged that the sale was void for the reason that the tax executions should have been levied on the property of the defendant in execution last conveyed by security deed.

7. The court erred in not sustaining the demurrer to that part of the petition which alleged that the sale was void because the levying officer failed to notify the tenant in possession of said levy. The provision of law which requires that the defendant in execution or other person in possession of realty shall be given five days notice of levy upon realty (Code, § 39-120), is merely directory, and not so essential as to avoid the levy, and affords no ground for avoiding a sale had pursuant thereto. *Haden* v. *Liberty Co.,* 183 *Ga.* 209 (188 S. E. 29), and cit.; *Clark* v. *C. T. H. Cor.,* supra.

8. A deed to land is sufficient to pass title if the descriptive averments afford a key by which the land can be definitely located by the aid of extrinsic evidence. *Prudential Insurance Co.* v. *Hill,* 170 *Ga.* 600 (2) (153 S. E. 516), and cit. Under this rule the tax deed in the instant case was sufficiently definite to pass title to the lands therein described. The court erred in overruling

the demurrer to that part of the petition alleging the tax deed to be void for indefiniteness of description.

9. The grounds of demurrer not herein dealt with are without merit.     *Judgment reversed. All the Justices concur.*